UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIMOTHY J. HARGRAVE,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF WASHINGTON, et al.,<br><br>Defendants. | CASE NO. C14-0376JLR<br><br>ORDER DENYING MOTION TO DISMISS |

## I. INTRODUCTION

Before the court is Defendants' motion to dismiss in this employment discrimination case. (Mot. (Dkt. # 14).) Plaintiff Timothy Hargrave was denied tenure as a professor at the University of Washington Bothell campus ("UW Bothell"). (Am. Compl. (Dkt. # 12).) He sued the University, along with numerous individuals who were involved in his tenure decision. (*See id.*) Defendants now move to dismiss Mr. Hargrave's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Mr.

ORDER- 1

Hargrave's discrimination claims[1] do not meet the threshold for plausibility set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The court disagrees. The court has examined the complaint and concludes that Mr. Hargrave's complaint meets the requisite pleading standards. Accordingly, Defendants' motion to dismiss is DENIED.

## II. BACKGROUND

Mr. Hargrave is a 52-year old Caucasian male who lives in Lake Forest Park, Washington, and teaches at UW Bothell. (Am. Compl. (Dkt. # 12) ¶ 1.) His area of research within the program is "management," including institutional theory and business ethics. (*Id.*) Mr. Hargrave was hired by UW Bothell in 2006 as a tenure-track assistant professor. (*Id.* ¶ 8.)

Mr. Hargrave alleges that certain defendants in this case did not like him right from the start. He claims that Defendant P.V. Balakrishnan described Mr. Hargrave as "the stupidest person he, Defendant Balakrishnan, had ever interviewed" and opposed hiring him at all. (*Id.* ¶ 7.)

Nevertheless, Mr. Hargrave received positive performance reviews early in his career at UW Bothell. For example, in 2006, his research record was rated as "highly meritorious," his teaching and service as "meritorious," and his overall performance as "highly meritorious." (*Id.* ¶ 11.) In 2007, he was rated "meritorious" in all three of these categories. (*Id.* ¶ 13.) In 2009, his research was rated as "highly meritorious," his

---

[1] Mr. Hargrave also asserts claims for breach of contract, but Defendants do not seek to dismiss those claims in this motion. (Mot. at 2 n.1.)

teaching as "highly meritorious," his service as "meritorious," and his overall performance as "highly meritorious." (*Id.* ¶ 16.) He received the same ratings in 2010 as he did in 2009. (*Id.* ¶ 19.)

In the 2011-2012 academic year, Mr. Hargrave underwent a mandatory review for promotion and tenure. (*Id.* ¶¶ 22-27.) At UW Bothell, tenure decisions are made based on an evaluation of the candidate's record in teaching, research, and service. (*Id.* ¶ 22.) To receive tenure, a candidate must have "a substantial record of success in both teaching and research . . . ." (*Id.* ¶ 23.) Mr. Hargrave alleges that his research record was exemplary. (*See, e.g.*, *id.* ¶¶ 27-29.) For example, he alleges that he had a "base of publications in high quality refereed journals" such as the *Academy of Management Review* and *Business Ethics Quarterly*. (*Id.* ¶ 27.) He also alleges that he co-authored three chapters of books and made numerous presentations at professional meetings. (*Id.* ¶ 28.)

Numerous people recommended Mr. Hargrave for tenure. In accordance with University procedures, Mr. Hargrave's application for tenure was reviewed by five external reviewers, all of whom "unequivocally endorsed" his candidacy for promotion and tenure. (*Id.* ¶ 31.) Likewise, a tenure committee comprised of three professors gave him its "highest recommendation for promotion and tenure." (*Id.* ¶ 36.)

However, on October 21, 2011, the tenured faculty in the UW Bothell business program voted to deny Mr. Hargrave tenure. (*Id.* ¶¶ 38-39.) Mr. Hargrave alleges that the vote was 3-2 against him, and that two of the three votes against him were cast by faculty members who shared a common Indian ethnicity, defendants Balakrishnan and

ORDER- 3

Gowri Shankar, and both of whom received their education in India. (*Id.* ¶ 39.) He also alleges that Defendant Sandeep Krishnamurthy, who is also Indian, undertook numerous actions to sabotage his tenure candidacy. (*See, e.g.*, *id.* ¶¶ 43-49.) Eventually, it was decided that Mr. Hargrave's tenure decision would be postponed until the 2012-2013 academic year. (*Id.* ¶¶ 46, 50-52.)

Mr. Hargrave's second tenure review produced the same unfavorable result. In 2012-2013, he again underwent an external review process and all but one of the external reviewers evaluated him favorably. (*Id.* ¶¶ 57-61.) Again, a promotion and tenure committee unanimously recommended him for tenure. (*Id.* ¶ 62.) The committee stated that Mr. Hargrave "embodies the attributes we prize in that he conducts innovative high-quality research that impacts his field, teaches intellectually challenging courses, and takes service roles seriously." (*Id.* ¶ 63.) Nevertheless, when the time came for the final vote, the same three faculty members as before voted against Mr. Hargrave, this time joined by Defendant Pradyot Sen. (*Id.* ¶ 66.) The vote was 4-3 against Mr. Hargrave with one faculty member, Professor Carlos Gomez, abstaining. (*Id.*)

Mr. Hargrave was ultimately denied promotion and tenure. (*Id.* ¶ 75.) He alleges that, after the vote, Defendant Krishnamurthy sabotaged his candidacy by making erroneous assertions about Mr. Hargrave's qualifications and significantly downplaying Mr. Hargrave's accomplishments by "cherry picking" from his academic record. (*Id.* ¶¶ 68-74.) Mr. Hargrave alleges that the decision to deny him tenure was based not on his record, but on race, national origin, and sex discrimination. (*Id.* ¶¶ 86-91.) As such, he brings claims for employment discrimination and breach of contract. (*See id.*)

Mr. Hargrave also alleges that other similarly-situated tenure candidates were treated differently than he was. He alleges that Defendants Balakrishnan, Miller, and Shankar voted to recommend tenure for Professor Gomez, who is Hispanic, in spite of the fact that Professor Gomez had a comparatively inferior research record. (*Id.* ¶¶ 40-42.) Likewise, Mr. Hargrave alleges that Defendants Balakrishnan, Krishnamurthy, and Sen voted, around the same time, to recommend tenure for a candidate who shared their Indian ethnicity but had never taught at UW Bothell before. (*Id.* ¶¶ 77-83.) Mr. Hargrave also alleges that Defendants Krishnamurthy, Balakrishnan, Sen, Shankar, and Miller all voted to recommend tenure for a female candidate with a "demonstrably inferior research record to that of Prof. Hargrave." (*Id.* ¶ 76.)

Defendants filed this motion to dismiss, arguing that Mr. Hargrave's complaint does not meet the pleading standards set forth in *Twombly* and *Iqbal*. (*See* Mot.)

### III. ANALYSIS

#### A. Pleading Standard Under *Twombly and Iqbal*

Both before and after *Twombly* and *Iqbal*, the most basic federal pleading requirement has long been that every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a)(2). The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). But Rule 8(a)(2), like many rules, leaves important questions unanswered. Specifically, what kind of "showing" is necessary to demonstrate that the pleader is entitled to relief?

Before *Twombly*, pleading standards were relatively liberal. Plaintiffs were required to show only that they would "conceivably" be entitled to relief if all allegations in the complaint were taken as true. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (holding that a Rule 12(b)(6) motion should be denied unless it appeared "beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief")). In other words, pleading was sufficient if it appeared possible from the face of the complaint that the plaintiff might be entitled to relief. *Id.*

In *Twombly* and *Iqbal*, the Supreme Court established a more stringent pleading standard. 550 U.S. at 562-63. Under those cases, it is not enough that a claim to relief be merely "possible" or "conceivable." Instead, a claim to relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court elaborated: a claim for relief is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). As the Court said in *Iqbal*, this standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To cross the line from conceivable to plausible, a complaint must contain a sufficient quantum of "factual matter" alleged with a sufficient level of specificity to raise entitlement to relief above the speculative level. *Twombly*, 550 U.S. at 555.

In this inquiry, two considerations are particularly relevant. First, context matters. *Iqbal*, 556 U.S. at 678-79 (describing the inquiry as "context-specific"). A complex, large-scale case such as a class action should naturally have a higher plausibility

threshold than a simpler case.  *See Twombly*, 550 U.S. at 557-58.  This is because denying a 12(b)(6) motion opens the door to discovery, and in some cases discovery could be very costly for the defendant.  As the court said in *Iqbal*, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-79.  Thus, the plausibility threshold may vary with the complexity of the case and the possibility of an abnormally heavy discovery burden.

Second, a certain level of factual specificity is required.  The court is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  As the Supreme Court said in *Iqbal*, a complaint must do more than tender "'naked assertions' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

However, *Twombly* and *Iqbal* are not meant to be impassible sentinels barring the paths of all who would climb the courthouse steps.  Even under the more stringent "plausibility" standard, the court is not permitted to weigh competing inferences as it could in, for example, a securities fraud case.  *See, e.g.*, *In re Watchguard Sec. Litig.*, No. C05-0678JLR, 2006 WL 2038656, at *3 (W.D. Wash. Apr. 21, 2006).  The court must still treat the plaintiff's factual allegations as true and indulge all reasonable inferences in the plaintiff's favor.  *Iqbal*, 556 U.S. at 678; *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  The court may not attempt to forecast a plaintiff's likelihood of success on the merits, and may not base dismissal on an assessment that proof of facts is improbable or unlikely.  *See Twombly*, 550 U.S. at 563 n.8 ("[W]hen a

ORDER- 7

complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."); *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011).

**B.   Dismissal Under Rule 12(b)(6) is Not Appropriate**

Defendants ask the court to dismiss Mr. Hargrave's complaint under Rule 12(b)(6). Defendants do not argue that Mr. Hargrave's complaint fails to state a cognizable legal theory or is otherwise legally insufficient. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Instead, Defendants argue that the court should dismiss the complaint under *Iqbal* and *Twombly* because Mr. Hargrave's factual allegations do not cross the threshold from "conceivable" to "plausible." (Mot. at 9-14.) Defendants argue that Mr. Hargrave does not allege pretext or discrimination with enough specificity and that his claims for relief are therefore implausible. (*See id.*) Further, Defendants take issue with some of the specific allegations in Mr. Hargrave's complaint, engaging those allegations on a factual level and asserting that they are not as compelling as Mr. Hargrave makes them out to be. (*Id.* at 11-12.)

Defendants do not make a persuasive case for Rule 12(b)(6) dismissal. The pending motion reads more like a motion for summary judgment than a motion to dismiss. Defendants invite the court to dramatically push the limits of *Iqbal* and *Twombly*, but the court will not do so. In essence, Defendants argue that Mr. Hargrave's inference of discrimination is not as compelling as the competing inference that Mr. Hargrave was denied tenure because of his performance. (*See id.* at 9-14.) And while

Defendants pay lip service to the canonical Rule 12(b)(6) standards (*see id.* at 2-3 n.2-3, 8-9), they nevertheless urge the court to focus on certain alleged facts to the exclusion of others, to favor one reasonable inference over another, and to predict the likelihood of Mr. Hargrave's success in this case. (*See id.* at 9-14.) That is not the court's role on a Rule 12(b)(6) motion, and the court will not push the limits of *Iqbal* and *Twombly* in the manner that Defendants suggest. *See, e.g.*, *Ocasio-Hernandez*, 640 F.3d at 12-13.

Despite Defendants' arguments, Mr. Hargrave has crossed the "plausibility" threshold. He has provided detailed allegations that set forth, with specificity, exactly what he believes happened in this case. (*See generally* Am. Compl.) He has described all of the events that form the basis of his claim, and none of these factual allegations suggest that his claim to relief could fairly be described as "implausible." (*See id.*) More critically, he alleges a pattern of facts that leads to a reasonable inference that he was denied tenure for discriminatory reasons. For example, he alleges that prior to his tenure decision, he received "highly meritorious" reviews in all categories including research. (*Id.* ¶ 19.) He alleges that external evaluators recommended he be granted tenure, and a tenure committee agreed, giving him its "highest recommendation." (*Id.* ¶¶ 29-36.) He alleges that the reasons given for his denial of tenure were pretextual and that the actual reason was discrimination on the basis of race, national origin, and age—specifically, because he was white and non-Indian. (*Id.* ¶¶ 86-91.) Finally, he alleges that other similarly-situated candidates were treated more favorably than him, including a man of Indian ethnicity who had never even taught at UW Bothell. (*Id.* ¶¶ 26, 42, 76-83.) In short, he alleges a set of facts that permit a reasonable inference of discrimination. And

1  while Defendants may believe that their competing inference of non-discrimination is
2  more believable, that is not the point.
3       Mr. Hargrave has properly alleged claims for employment discrimination against
4  Defendants, and the court therefore DENIES Defendants' motion to dismiss. For the
5  same reasons, the motion is also denied with respect to Mr. Hargrave's claims against the
6  individual Defendants. (*See* Mot. at 14-16 (arguing that claims against individual
7  defendants should be dismissed because dismissal of claims against University is
8  proper).)

## IV. CONCLUSION

10       For the reasons stated above, Mr. Hargrave's motion to dismiss (Dkt. # 14) is
11  DENIED.
12       Dated this 12th day of June, 2014.

                                                             JAMES L. ROBART
                                                            United States District Judge